IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CRAIG R. JOHNSON,

    Petitioner,                      No. CIV S-11-0228 CKD P

  vs.

G. SWARTHOUT,

    Respondent.                  ORDER

_____/

        Petitioner, a state prisoner proceeding pro se, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In 1979, petitioner was convicted of second degree murder in San Mateo County. He is serving a sentence of fifteen-years-to-life imprisonment. On February 1, 2011, petitioner consented to all proceedings in this matter being held before a United States Magistrate Judge. See 28 U.S.C. § 636(c).

        Petitioner has requested an extension of time to file a request to proceed in forma pauperis. Good cause appearing, petitioner's request will be granted. Examination of the in forma pauperis application reveals that petitioner is unable to afford the costs of suit. Accordingly, the application to proceed in forma pauperis will be granted as well. See 28 U.S.C. § 1915(a).

/////

Under Rule 4 of the Rules Governing § 2254 Cases, the court must conduct a preliminary review of § 2254 habeas petitions and dismiss any petition where it plainly appears that petitioner is not entitled to relief in this court.  As indicated below, it is clear petitioner is not entitled to habeas relief.

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  Also, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)."[1]  It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d).  See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different.  As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor,

---

[1] Title 28 U.S.C. § 2254(d) establishes a precondition to federal habeas relief, not grounds for entitlement to habeas relief.  Fry v. Pliler, 551 U.S. 112, 119 (2007).

2

> 529 U.S. 362 (2000)] that an unreasonable application is different
> from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002).  A state court does not apply a rule different from the law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to cite or fails to indicate an awareness of federal law.  Early v. Packer, 537 U.S. 3, 8 (2002).

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court fails to give any reasoning whatsoever in support of the denial of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable.  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  In other words, the court assumes the state court applied the correct law, and analyzes whether the decision of the state court was based on an objectively unreasonable application of that law.

It is appropriate to look to lower federal court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law.  "Clearly established" federal law is that determined by the Supreme Court.  Arredondo v. Ortiz, 365 F.3d 778, 782-83 (9th Cir. 2004).  At the same time, it is appropriate to look to lower federal court decisions as persuasive authority in determining what law has been "clearly established" and the reasonableness of a particular application of that law.  Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 1999); Clark v. Murphy, 331 F.3d 1062 (9th Cir. 2003), overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63 (2003); cf. Arredondo, 365 F.3d at 782-83 (noting that reliance on Ninth Circuit or other authority outside bounds of Supreme Court precedent is misplaced).

3

1 First, petitioner asserts he was denied due process in violation of the Fourteenth
2 Amendment by the decision to deny him parole in 2009 because the decision to deny him parole
3 is not supported by sufficient evidence.  The Due Process Clause of the Fourteenth Amendment
4 prohibits state action that deprives a person of life, liberty, or property without due process of
5 law.  A litigant alleging a due process violation must first demonstrate that he was deprived of a
6 liberty or property interest protected by the Due Process Clause and then show that the
7 procedures attendant upon the deprivation were not constitutionally sufficient.  Kentucky Dep't
8 of Corrections v. Thompson, 490 U.S. 454, 459-60 (1989).

9 A protected liberty interest may arise from either the Due Process Clause of the
10 United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an
11 expectation or interest created by state laws or policies."  Wilkinson v. Austin, 545 U.S. 209,
12 221 (2005).  See also Board of Pardons v. Allen, 482 U.S. 369, 373 (1987).  The United States
13 Constitution does not, of its own force, create a protected liberty interest in a parole date, even
14 one that has been set.  Jago v. Van Curen, 454 U.S. 14, 17-21 (1981); Greenholtz v. Inmates of
15 Neb. Penal, 442 U.S. 1, 7 (1979) (There is "no constitutional or inherent right of a convicted
16 person to be conditionally released before the expiration of a valid sentence.").  However, a
17 state's statutory scheme, if it uses mandatory language, "creates a presumption that parole release
18 will be granted" when or unless certain designated findings are made, and thereby gives rise to a
19 constitutional liberty interest.  Greenholtz, 442 U.S. at 12.  See also Allen, 482 U.S. at 376-78.

20 California's parole scheme gives rise to a liberty interest in parole protected by the
21 federal Due Process Clause.  Pirtle v. California Bd. of Prison Terms, 611 F.3d 1015, 1020 (9th
22 Cir. 2010); McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002); see also Swarthout,131 S.
23 Ct. at 861-62 (finding the Ninth Circuit's holding in this regard to be a reasonable application of
24 Supreme Court authority); Pearson v. Muntz, 639 F.3d 1185, 1191 (9th Cir. 2011) ("[Swarthout
25 v.] Cooke did not disturb our precedent that California law creates a liberty interest in parole.")
26 In California, a prisoner is entitled to release on parole unless there is "some evidence" of his or

her current dangerousness. In re Lawrence, 44 Cal.4th 1181, 1205-06, 1210 (2008); In re Rosenkrantz, 29 Cal.4th 616, 651-53 (2002).

In Swarthout, the Supreme Court reviewed two cases in which California prisoners were denied parole – in one case by the California Board of Parole Hearings (Board), and in the other by the Governor after the Board had granted parole. Swarthout, 131 S. Ct. at 860-61. The Supreme Court noted that when state law creates a liberty interest, the Due Process Clause of the Fourteenth Amendment requires fair procedures, "and federal courts will review the application of those constitutionally required procedures." Id. at 862. The Court concluded that in the parole context, however, "the procedures required are minimal" and that the "Constitution does not require more" than "an opportunity to be heard" and being "provided a statement of the reasons why parole was denied." Id. (citing Greenholtz, 442 U.S. at 16). The Supreme Court therefore rejected Ninth Circuit decisions that went beyond these minimal procedural requirements and "reviewed the state courts' decisions on the merits and concluded that they had unreasonably determined the facts in light of the evidence." Swarthout, 131 S. Ct. at 862. In particular, the Supreme Court rejected the application of the "some evidence" standard to parole decisions by the California courts as a component of the federal due process standard. Id. at 862-63. See also Pearson, 639 F.3d at 1191.

After the Supreme Court's decision in Swarthout, it is clear that the question of whether the Board reasonably applied California's "some evidence" standard in a prisoner's parole hearing does not give rise to a claim for federal habeas relief. Swarthout, 131 S. Ct. at 862-63; see also Miller v. Oregon Bd. of Parole and Post-Prison Supervision, 642 F.3d 711, 716 (9th Cir. 2011) ("The Supreme Court held in [Swarthout v.] Cooke that in the context of parole eligibility decisions the due process right is *procedural*, and entitles a prisoner to nothing more than a fair hearing and a statement of reasons for a parole board's decision[.]") (emphasis in original); Roberts v. Hartley, 640 F.3d 1042, 1046 (9th Cir. 2011) (under the decision in Swarthout, California's parole scheme creates no substantive due process rights and any

procedural due process requirement is met as long as the state provides an inmate seeking parole with an opportunity to be heard and a statement of the reasons why parole was denied); <u>Pearson</u>, 639 F.3d at 1191 ("While the Court did not define the minimum process required by the Due Process Clause for denial parole under the California system, it made clear that the Clause's requirements were satisfied where the inmates 'were allowed to speak at their parole hearings and to contest the evidence against them, were afforded access to their records in advance, and were notified as to the reasons why parole was denied.'")

In this case, the habeas petition and exhibits attached thereto show that petitioner was represented by counsel at his 2009 parole suitability hearing. Pet. Ex. B. The record also establishes that petitioner was allowed the opportunity to be heard at his hearing and received a statement of the reasons why the Board panel decided to deny him parole. <u>Id</u>. Petitioner thus received all the process due him under the Constitution. <u>Swarthout</u>, 131 S. Ct. 862; <u>see</u> <u>also</u> <u>Miller</u>, 642 F.3d at 717; <u>Roberts</u>, 640 F.3d at 1046; <u>Pearson</u>, 639 F.3d at 1191. Accordingly, petitioner's due process challenge to his being denied parole in 2009 has no merit.

Petitioner also claims he was denied due process in violation of state law when he was denied parole in 2009. However, petitioner may not obtain relief on this claim because an application for writ of habeas corpus can only be granted if a violation of federal law has occurred. 28 U.S.C. § 2254(a).

Next, petitioner asserts that delaying his next parole hearing five years following the 2009 hearing violates the Ex Post Facto Clause of the Constitution and California Law. California voters recently approved the "Victims' Bill of Rights Act of 2008," otherwise known as "Marsy's Law." Under California law as it existed prior to the enactment of "Marsy's Law," indeterminately-sentenced inmates, such as petitioner, were denied parole for one year unless the parole hearing panel found it unreasonable to expect that parole could be granted the following year, in which case the subsequent hearing could be extended up to five years. Cal. Penal Code § 3041.5(b)(2) (2008). At his 2009 parole hearing, petitioner was subject to the terms of "Marsy's

Law," which authorizes denial of a subsequent parole hearing for a period of up to fifteen years. Cal. Pen. Code, § 3041.5(b)(3). The shortest interval that the parole hearing panel may set is three years, based on a finding that petitioner "does not require a more lengthy period of incarceration . . . than seven additional years." Cal. Pen. Code, § 3041.5(b)(3)(c).

Petitioner presented his ex post facto claim to all three levels of California's Courts. Pet. at 7-8. The only court to address the claim in any detail was the Superior Court of San Mateo County:

> Assuming, without deciding, that the diminished frequency of parole consideration hearings pursuant to section 3041.5, as amended by Proposition 9 could constitute ex post facto legislation, there is no such violation as applied in this case.
>
> In California Dept. of Corrections v. Morales (1995) 514 U.S. 499, a California prisoner convicted of murder in 1980 brought an ex post facto challenge to the change in law that decreased the frequency of parole hearings to certain convicts. Under the law that was in place at the time of the murder, he would have been entitled to annual parole suitability hearings, but the 1981 amendment permitted the board to defer subsequent suitability hearings up to three years under certain circumstances. (Id. at p. 503.) The convict argued that the amendment retroactively increased his punishment, but the Supreme Court disagreed, holding that the amendment simply altered the method to be followed in fixing a parole release date under identical substantive standards. (Id. at p. 507.) The court found that the amendment created "only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes" for the following reasons: it applied only to a class of prisoners for whom the likelihood of release on parole was quite remote, it was narrowly tailored to that end, and the board retained authority to order more frequent hearings (Id. at p. 510.) All that the amendment did was allow the board to avoid the futility of going through the motions of reannouncing its denial of parole suitability on an annual basis. (Id. at p. 511.)
>
> Given the factors weighing against Petitioner's current parole suitability, the fact that Petitioner's next parole consideration hearing was scheduled for five rather than one year after the 2009 hearing, results in "only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for [Petitioner's] crimes." As such, the application of the 5-year parole denial to him constitutes no *ex post facto* violation. Petitioner has adduced no evidence indicating that

> his time in prison will be lengthened by the amendments to section 3041.5.

Pet., Ex. C at 7-8. Because the Superior Court of San Mateo County's decision with respect to petitioner's ex post facto claim is the only decision where any supporting reasoning is provided, it is that decision the court examines to determine if petitioner is barred from obtaining relief by 28 U.S.C. § 2254(d).

Clearly established federal law, as determined by Supreme Court, is as follows with respect to petitioner's ex post facto claims. A law violates the Ex Post Facto Clause if it: (1) punishes as criminal an act that was not criminal when it was committed; (2) makes a crime's punishment greater than when the crime was committed; or (3) deprives a person of a defense available at the time the crime was committed. Collins v. Youngblood, 497 U.S. 37, 52 (1990). A court may find an ex post facto violation if a change in the law "produces a sufficient risk of increasing the measure of punishment attached to the covered crimes." California Dep't of Corrections v. Morales, 514 U.S. 499, 509 (1995). The Court has not articulated a specific formula for "identifying those legislative changes that have a sufficient effect on . . . punishments to fall within the constitutional prohibition on [ex post facto laws]." Id. However, the court has found that changes that create only the most "speculative and attenuated possibility of producing the prohibited effect" of increasing punishment do not run afoul of the ex post facto clause. Id.; See Garner v. Jones, 529 U.S. 244, 251 (2000) (legislative change to parole rules must at minimum create "significant risk of prolonging . . . incarceration" to constitute a violation of the Ex Post Facto Clause).

The Supreme Court has not directly addressed whether application of "Marsy's Law" to persons convicted prior to its enactment constitutes the sufficient risk of increased punishment prohibited by the Ex Post Facto Clause. However, the Court has addressed an ex post facto challenge to a change in California law concerning the frequency of parole hearings. In Morales, 514 U.S. at 514, the court found that a 1981 amendment to Section 3041.5, which

increased maximum deferral period of parole suitability hearings to certain individuals from one to three years, did not violate the Ex Post Facto Clause.  Among other things, the court found the fact that an inmate could always seek an expedited hearing if the inmate felt that, between scheduled hearings, circumstances had changed to the point that he or she might at that time be found suitable for parole.  Id. at 512-13.  Considering this fact, the Court found: "there is no reason to conclude that the amendment will have any effect on any prisoner's actual term of confinement . . ."  Id. at 512.

Also, in Garner, 529 U.S. 244, the Court upheld Georgia's change in the frequency of parole hearings for prisoners serving life sentences from three to eight years in the face of an ex post facto challenge.  Again, the Court found it significant that inmates could seek an expedited hearing in the event of a change of circumstances:

> On the record in this case, we cannot conclude the change in Georgia law lengthened respondent's time of actual imprisonment. Georgia law vests broad discretion with the Board, and our analysis rests upon the premise that the Board exercises its discretion in accordance with its assessment of each inmate's likelihood of release between reconsideration dates.  If the assessment later turns out not to hold true for particular inmates, they may invoke the policy the Parole Board has adopted to permit expedited consideration in the event of a change in circumstances.

Id. at 256.

Here, as indicated above, the changes to the frequency of parole hearings are more extensive than in Morales and Garner and can potentially result in subsequent parole hearings occurring as much as fifteen years after the prior hearing.[2]  However, as in Morales and Garner, the parole board concerned, in this case the California Board of Parole Hearings post-"Marsy's Law," has the ability to advance a parole suitability hearing when "a change in circumstances or

/////

---

[2] See Gilman v. Schwarzenegger, 638 F.3d 1101, 1107-08 (9th Cir. 2011) for a detailed discussion of the differences between the statutes and regulations at issue in Morales, Garner, and in California post-"Marsy's Law."

9

new information" essentially establishes a reasonable likelihood that an inmate will be found suitable for parole. Cal. Pen. Code, § 3041.5(b)(4).

After reviewing the facts applicable to petitioner's ex post facto claim, the Superior Court of San Mateo County's decision rejecting petitioner's ex post facto claim, clearly established federal law as determined by the Supreme Court, and California statutes and regulations related to the frequency with which parole hearings occurring after the first parole hearing must be held, the court finds that the decision of the Superior Court of San Mateo County rejecting petitioner's ex post facto claim is not contrary to, nor does it involve an unreasonable application of clearly established federal law as determined by the Supreme Court. Again, the Superior Court found that "Marsy's Law" did not lengthen petitioner's sentence. This conclusion is not out of line with decisions reached by the Supreme Court in both Morales and Garner, especially in light of the fact that, as in Morales and Garner, the parole board concerned can expedite a suitability hearing if the board believes it is reasonable to assume that the inmate in question will be paroled. Furthermore, nothing suggests the decision to reject petitioner's ex post facto claim by the Superior Court is based on an unreasonable determination of the facts. For all of the foregoing reasons, it is clear that petitioner is barred by 28 U.S.C. § 2254(d) from obtaining relief as to his ex post facto claim.[3]

Petitioner also claims that delaying his next parole hearing to 2014 constitutes a violation of his right to be free from cruel and unusual punishment under the Eighth Amendment. However, petitioner fails to point to anything suggesting he has a right arising under the Eighth Amendment to have a parole hearing at a particular time. The Eighth Amendment does require that a sentence not be grossly disproportionate to the crime committed. Ewing v. California, 538

---

[3] Petitioner is informed that there is a 42 U.S.C. § 1983 class action pending in this court where it is alleged that "Marsy's Law" violates the Ex Post Facto Clause of the Constitution. The name of the case is Gilman v. Fisher, CIV-S-05-0830 LKK GGH P and the class of persons identified as plaintiffs in that action consist of California prisoners serving indeterminate sentences, who are eligible for parole and who have been denied parole on one or more occasion. March 4, 2009 Order at 9. It appears petitioner is a member of that class.

U.S. 11, 23-24 (2003). But, that principle applies to the imposition of the sentence, not whether or when an inmate serving a years-to-life sentence should be paroled or the frequency with which they must be granted parole hearings. For these reasons, petitioner does not present a valid Eighth Amendment claim.

Petitioner asserts delaying his next parole hearing to 2014 amounts to a violation of his Fourteenth Amendment right to due process. However, petitioner fails to point to anything suggesting he has any right protected by the Due Process Clause to have a parole hearing before 2014.

Finally, petitioner's asserts application of the terms of "Marsy's Law" to his sentence violates provisions of California's Constitution. Again, violations of state law do not provide a basis for federal habeas relief. 28 U.S.C. § 2254(a).

For all the foregoing reasons, it is plain that petitioner is not entitled to relief under 28 U.S.C. § 2254. Therefore, petitioner's application for writ of habeas corpus will be dismissed.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Petitioner's March 8, 2011 request for an extension of time to file a motion to proceed in forma pauperis is granted;

2. Petitioner's March 15, 2011 motion to proceed in forma pauperis is granted;

3. Petitioner's application for writ of habeas corpus is dismissed;

4. This case is closed; and

5. The court declines to issue the certificate of appealability referenced in 28 U.S.C. § 2253.

Dated: October 17, 2011

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1/john0228.dis